Clara C. CHEN, Plaintiff,

v.

GEORGETOWN
UNIVERSITY, Defendant.

No. 86 Civ. 7297 (JES).

United States District Court,
S.D. New York.

May 26, 1988.

Julien & Schlesinger, P.C., New York City, for plaintiff; Alfred S. Julien, of counsel.

Williams & Connolly, Washington, D.C., for defendant; Vincent J. Fuller, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff, Dr. Clara C. Chen, commenced this action to recover damages for injuries sustained as a consequence of an accident in Thailand on October 26, 1985. Defendant Georgetown University ("Georgetown") removed the case to federal court on the basis of diversity pursuant to 28 U.S.C. § 1441 (1982). Subsequently, Georgetown moved for summary judgment pursuant to Fed.R.Civ.P. 56, alleging that plaintiff has failed to demonstrate the existence of facts sufficient to establish liability under either a theory of joint enterprise or of breach of contract. For the reasons that follow, the motion is granted.

### BACKGROUND

The following facts are undisputed.

The Center for Immigration Policy and Refugee Assistance ("CIPRA") was established by the board of trustees of Georgetown to provide volunteer medical assistance to refugees in Southeast Asia. *See* Deposition of Fr. Harold Bradley, S.J. ("Bradley Dep.") at 7. Since 1984, CIPRA has coordinated its activities with the Catholic Office for Emergency Relief and Refugees ("COERR"), an organization established under the auspices of the Bishops Conference of Thailand, see Affidavit of Monsignor Robert L. Charlebois ("Charlebois Aff.") at ¶¶ 7–8; Deposition of Herman Kleine ("Kleine Dep.") at 8, pursuant

to a program designated as the University Volunteer Internship Program ("UVIP"), *see* Charlebois Aff. at ¶ 5; Bradley Dep. at 8. UVIP organized volunteers from several universities who wished to serve in the medical facilities operated by COERR and was responsible for the logistical arrangements for the UVIP participants, including orientation and transportation to and from Thailand. Kleine Dep. at 9–11; Affidavit of Melissa M. Lankler ("Lankler Aff.") at ¶¶ 11, 13; Supplemental Affidavit of Fr. Harold Bradley, S.J. (July 16, 1987) ("Bradley Supp. Aff.") at ¶ 20; Charlebois Aff. at ¶¶ 5, 9.

In July of 1985, plaintiff volunteered to participate in the UVIP program. She was soon thereafter accepted. *See* Affidavit of Clara C. Chen ("Chen Aff.") at 1; Affidavit of Fr. Harold Bradley, S.J. (Oct. 7, 1986) ("Bradley Aff.") at ¶¶ 13–14. Prior to her departure for Thailand, plaintiff received various orientation materials outlining her responsibilities and explicitly informing her "that participants in the [UVIP] program were not allowed to drive a car while in Thailand, and would have to rely on COERR for transportation to and from the [refugee] camp." Chen. Aff. at 2; *see* Letter from Maryann Hrichak, Acting UVIP Program Coordinator, to Clara Chen (September 19, 1985) ("Hrichak Letter") at 3 (Ex. B to Chen Aff.); Pre–Departure Packet, Responsibilities to the Catholic Organization for Emergency Relief to Refugees and Georgetown University while in Thailand ("Responsibilities while in Thailand") at ¶ 5 (Exs. C & F to Chen Aff.). Georgetown paid all of plaintiff's travel expenses to Thailand, including her inoculations and visa application fee. *See* Chen Aff. at 3.

Plaintiff arrived in Thailand on October 10, 1985, at which time her assignment to "Site 2," a refugee camp near the Cambodian border, was confirmed. *See* Chen Aff. at 5–6; Affidavit of Matthew L. Warman ("Warman Aff.") at 3. Plaintiff was housed in Aranyaprathet, and between October 20 and October 26 she was taken each morning to Site 2, a drive of approximately 1½ hours. *See* Warman Aff. at 3; Hrichak Letter at 2.

On the morning of October 26, 1985, while en route to Site 2, the van carrying plaintiff veered off the road and flipped twice, causing the plaintiff severe and permanent injury. *See* Warman Aff. at 4–5; Chen Aff. at 6. The accident was allegedly caused by the negligence of COERR supervisors and the van operator. *See* Complaint at ¶¶ 10–11 (Ex. A to Verified Petition for Removal); *see also* Warman Aff. at 4–5.

### DISCUSSION

Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–51, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). Therefore, to defeat a motion for summary judgment, the nonmoving party must show the existence of facts which would permit a rational fact finder to infer each element of the claim as to which that party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The complaint alleges that since Georgetown was engaged with COERR in a joint enterprise, Georgetown is vicariously liable for the negligence of COERR. *See* Complaint at ¶¶ 8, 10–11. Plaintiff must therefore demonstrate that there is evidence which, if believed, would establish her claim that Georgetown was involved in a joint enterprise with COERR.

A joint enterprise is in the nature of a partnership, wherein each person "has express or implied authority to act for all with respect to the control of the means or agencies employed to execute the plan...." *Fairbairn v. State*, 107 A.D.2d 864, 864–65, 484 N.Y.S.2d 682, 683 (3d Dept.), *aff'd*, 66 N.Y.2d 620, 485 N.E.2d 239, 495 N.Y.S.2d 32 (1985). "Essential to the finding of a joint enterprise is the equal right of each member to direct or control the others in respect to the joint enterprise." *Id.* at 865, 484 N.Y.S.2d at 683 (citation omitted). Moreover, New York law requires that where, as here, the enterprise is not engaged in profit-making activity, plaintiff must show that the defendant

had some measure of control over the *injury-causing activity;* mere participation in the enterprise itself is not sufficient. It follows that plaintiff cannot establish a legal basis for liability against Georgetown based merely on its participation in the joint enterprise. She must show facts permitting a rational inference that Georgetown had some measure of control over the van itself.[1]

That conclusion is clearly supported by *Sannella v. Nassau County Fire Comm'n,* 87 A.D.2d 625, 448 N.Y.S.2d 241 (2d Dep't 1982), a case in which the defendant was one of nine fire departments participating in a fire drill. The smoke-making device that allegedly caused plaintiff's injuries was owned by another participating fire department, and was operated at the drill by yet a third department. *Id.* at 625, 448 N.Y.S.2d at 241. The court, in affirming summary judgment for the defendant, held that liability could not be predicated on the defendant's alleged participation in a joint enterprise because plaintiff failed to show that the defendant "was given and retained any measure of control over the operation of the smoke-making device." *Id.* at 626, 448 N.Y.S.2d at 242. The court held that such control could not be based solely on defendant's participation in the drill itself. *See id.,* 448 N.Y.S.2d at 243.

Similarly, the court in *Fairbairn v. State* held that absent that element of control, liability could not be imputed to a defendant under a joint enterprise theory. In *Fairbairn,* a child was injured when a cannister he found floating in a pond exploded. The cannister was one of several which had been seized by federal agents in a number

of drug-related arrests and discarded by the agents in the pond. 107 A.D.2d at 864, 484 N.Y.S.2d at 683. The State Police had assisted the federal agents in their investigation, and an action was brought against the state under a joint enterprise theory. The court found, however, that since the state police had no control over the investigation, they could not be found liable on the theory that they had participated in a joint enterprise. *See id.* at 865, 484 N.Y.S. 2d at 683–84; *see also Koroluck v. Giordano's Service Center, Inc.,* 34 A.D.2d 1013, 1013–14, 312 N.Y.S.2d 804, 805 (2d Dep't 1970) (negligence will not be imputed merely because of co-ownership).

These cases are dispositive here. Reference to the van as the "Georgetown van" [2] and characterization of the UVIP program by Georgetown as coordinated between itself and COERR are not facts from which a rational fact finder could infer that Georgetown had any control over the operation of the van itself. *See Fairbairn,* 107 A.D.2d at 865, 484 N.Y.S.2d at 684 (documents which characterized operation between state police and DEA as "joint" not dispositive; element of control still lacking).

Similarly, Georgetown's reimbursement of COERR for the cost of the van and most operating expenses and the letter from the director of COERR, which Georgetown received in connection with the reimbursement stating that the van would be used primarily in the UVIP program,[3] are circumstances which likewise do not support an inference that Georgetown had the type of control necessary to establish a joint enterprise under New York law. This is especially true since there are no facts

---

1. Plaintiff has not indicated, in her brief or otherwise, which law she deems applicable to this motion. Georgetown, however, has assumed for the purpose of this motion that New York law governs, *see* Reply to Plaintiff's Opposition to the Motion of Defendant Georgetown University to Dismiss or, in the Alternative, for Summary Judgment ("Def. Reply") at 4 n. 1, an assumption which plaintiff not only does not challenge but with which plaintiff apparently concurs. Indeed, in a letter dated January 12, 1988, plaintiff urges the Court to consider a New York Court of Appeals case in determining this motion. The Court therefore will apply New York law to this motion. *See Lehman v. Dow Jones & Co.,* 783 F.2d 285, 294 (2d Cir. 1986).

2. Indeed, it is not even clear that the van, which is clearly marked "COERR," *see* Def. Reply, Ex. 1, was actually used only for the Georgetown volunteers. Moreover, Georgetown volunteers were transported in other vehicles as the affidavit of Dr. Warman reflects. *See* Warman Aff. at 4.

3. The body of this letter states in full:

This is to certify that the Isuzu van purchased by COERR in July 1984 for use in the University Volunteer Internship Program is primarily used for this purpose. That is, COERR uses this van to: (1) meet incoming team members at the airport; (2) transport them from Bangkok to Phanat Nikhom; (3) provide daily

alleged which would permit a rational inference that Georgetown had any power to hire or discharge the driver, or even to direct that the van be used for a particular purpose on a particular occasion. *See* Bradley Aff. at ¶ 24, Bradley Supp. Aff. at ¶¶ 15, 18; Bradley Dep. at 58. Neither reimbursement of costs nor Georgetown's alleged co-ownership of the van is a legally sufficient predicate to infer that Georgetown had any such powers over the driver or the use of the van.[4]

Considering all these circumstances, the Court concludes that plaintiff has failed to show the existence of facts which would support a rational inference of joint control over the use and operation of the van. Therefore, defendant's motion for summary judgment with respect to plaintiff's claim based on that alleged control must be granted.[5]

▮ The defendant is also entitled to summary judgment on plaintiff's contract claim. Plaintiff contends that "as part of the agreement under which plaintiff agreed to serve in the UVIP program, there was an undertaking by defendant to furnish safe living and working conditions, including a safe means of transportation to plaintiff between her living quarters and the camp." Pl. Mem. at 21; *see also* Complaint at ¶¶ 16–20. However, in response to defendant's motion plaintiff has cited no evidence supporting the existence of that contract.

The only statements by the defendant which plaintiff relies on to support her contract claim are representations concerning the adequacy of plaintiff's insurance coverage and the safety of serving at Site 2. *See* Affidavit of Herman Kleine ("Kleine Aff.") at ¶ 14; Chen Aff. at 5; Warman Aff. at 2–3; Pl.Mem. at 8–9. It is undisputed that those representations related only to the danger of acts of war, including Vietnamese invasion. Plaintiff does not allege either in her affidavit or her complaint that defendant represented to her that *safe transportation* would be provided. Indeed, it appears clear that any concern for safe transportation was never

---

transportation for the team members to and from the refugee camp; and (4) bring the students from Phanat Nikhom to Bangkok at the end of their rotations. Letter from Rev. Fr. Bunlert Tharachatr, Executive Director of COERR, to Fr. Bradley (Apr. 10, 1985) ("Tharachatr letter"). This certification was requested by Georgetown for record keeping in connection with a grant by the United States Department of State, part of which was used for reimbursing COERR for the purchase of the van. *See* Kleine Aff. at ¶¶ 8–10 & Exs. 1–4; Bradley Dep. at 82.

4. In any event, while co-ownership is not enough to infer the requisite control, it is not even clear that the evidence supports an inference that Georgetown was a co-owner of the van. In the letter relied upon by plaintiff to demonstrate Georgetown's control, the Executive Director of COERR, Father Bunlert Tharachatr, states that the van was "purchased by COERR." *See* Tharachatr Letter. Moreover, the funds transferred to COERR as reimbursement for the cost of the van were characterized as a donation, for which COERR issued a charitable contribution receipt. *See* Bradley Supp. Aff. at ¶ 17 & Ex. 3. Lastly, in a telex reporting plaintiff's accident to Father Bradley, director of CIPRA, an executive director of COERR referred to the van as a "COERR vehicle." *Id.* at ¶ 15 & Ex. 1.

5. The cases relied on by the plaintiff are not to the contrary. In *Fries v. United States,* 170 F.2d 726 (6th Cir.1948), *cert. denied,* 336 U.S. 954, 69 S.Ct. 876, 93 L.Ed. 1109 (1949), the Court stated that "[t]he most important criterion of a joint venture is joint control or management of the property used in accomplishing its aims." *Id.* at 729. Applying this standard to the facts herein, the "property used" in the alleged enterprise between Georgetown and COERR is the van. Therefore, *Fries* would also require that plaintiff demonstrate the existence of facts suggesting joint control or management of the van. *See generally* 5 Harper, James & Gray, *The Law of Torts* § 26.13 (2d ed. 1986).

Additionally, in a letter dated January 12, 1988, plaintiff urges the Court to consider *Miles v. R & M Appliance Sales, Inc.,* 26 N.Y.2d 451, 259 N.E.2d 913, 311 N.Y.S.2d 491 (1970), in determining this motion. However, *Miles* is both legally and factually inapposite to this motion. In *Miles,* the court held that by undertaking to make certain repairs to an air conditioner, even though it had no obligation to do so, defendant seller had assumed a duty of reasonable care, and that delegation of the repairs could not absolve defendant of liability. *See id.* at 454, 259 N.E.2d at 915–16, 311 N.Y.S.2d at 493–94. In contrast to that case, Georgetown never assumed the responsibility of providing transportation for plaintiff in Thailand. Indeed, plaintiff was clearly aware that she would have to rely on COERR for transportation arrangements in Thailand. *See* Chen Aff. at 2.

mentioned in discussions with defendant. Kleine Aff. at ¶ 14. Moreover, plaintiff was clearly aware that COERR, and not defendant, was to provide transportation in Thailand. *See* Chen Aff. at 2.

It follows that plaintiff has failed to show the existence of facts which could establish a contract for safe transportation and that the defendant is entitled to summary judgment with respect to that alleged contract.[6]

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment must be granted. The Clerk of Court shall enter judgment accordingly and close the above-captioned action.

It is SO ORDERED.

---

**6.** Defendant further argues that prior to her departure, plaintiff signed a waiver releasing Georgetown from any liability for personal injuries arising from travel in Thailand. *See* [Defendant's] Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment at 13–14; Chen Aff. at Ex. G. Since the Court has granted defendant's motion for summary judgment for other reasons, there is no need to decide whether under New York law that release precludes plaintiff's claims.